UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL SELTZER,

                        Plaintiff,                       Civ. Action No.: 19-CV-11176

              -against-                       COMPLAINT

                                                  JURY TRIAL DEMANDED

NATIONAL GENERAL INSURANCE COMPANY,
NATIONAL GENERAL HOLDINGS CORP.,
ROE AND ASSOCIATES, and MATTHEW J.
ROE,

                        Defendants.
-------------------------------------------------------------X

      Plaintiff Michael Seltzer ("Seltzer" or "Plaintiff"), by his attorneys, Beranbaum Menken LLP, complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action to remedy violations by the Defendants of Plaintiff Michael Seltzer's civil rights. The Defendants discriminated against and fired Mr. Seltzer because of his Jewish religion and race, in violation of 42 U.S.C. §§ 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

2.      Plaintiff seeks economic, compensatory and punitive damages as well as declaratory relief in this action.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5.

4.      The Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the federal law claims as to form part of the same case and controversy under Article III of the United States Constitution.

5.      On January 19, 2017, Plaintiff filed with the U.S. Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination under Title VII, alleging religious discrimination and unlawful retaliation by the Defendants.

6.      August 8, 2019, the EEOC issued a "Determination" finding that there was reasonable cause to believe that Defendants National General Insurance Company and Roe & Associates discriminated against Plaintiff on the basis of religion, and retaliated against him.

7.      On September 26, 2019, the EEOC issued a right-to-sue letter.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

9.      Plaintiff Michael Seltzer is an attorney who resides in Brooklyn, New York.

10.      Defendant National General Insurance Company ("NGIC") is a national insurance company domiciled in Missouri with its headquarters and principal place of business located in North Carolina.

11.      Defendant NGIC was formerly known as GMAC Insurance Company.

12.      Defendant NGIC is a wholly-owned subsidiary of Defendant National General Holdings Corp. ("NGHC").

12.      NGHC is a Delaware corporation with a principal place of business at 59 Maiden Lane, 38th Floor, New York, New York.  NGHC and NGIC employ thousands of individuals.

13.    Defendant Roe & Associates ("Roe") is a "captive" law firm, whose operations were wholly controlled by NGIC and NGHC.  Roe's business address is 5 Hanover Square, 22nd Floor, New York, New York, but at the time of the events herein, Roe's business address was 59 Maiden Lane, 40th Floor, New York, New York.  Roe employs about 30 individuals.

14.    Defendant Matthew J. Roe is an attorney who was the Plaintiff's direct supervisor, and was Plaintiff's "employer" within the meaning of Section 1981 and the NYCHRL.  As set forth herein, Matthew Roe encouraged, condoned, approved, and perpetuated the discriminatory conduct.

15.    At all times relevant to this Complaint, all Defendants jointly employed Plaintiff, and were his "employer" as that term is defined by Title VII and the NYCHRL.

16.    At all times relevant to this Complaint, NGIC, NGHC and Roe operated as part of a single integrated enterprise that employed and/or jointly employed Plaintiff.

17.    NGIC's, NGHC's and Roe's operations are interrelated and unified.

18.    At all relevant times, NGHC exercised dominion and control over NGIC and Roe, and that dominion and control was used to commit the violations outlined herein.

**FACTUAL ALLEGATIONS**

19.    Plaintiff is Jewish and observes the Sabbath and Jewish holidays according to the dictates of his faith.

20.    Plaintiff was first hired as an attorney by NGIC in 2010, when it was still known as GMAC Insurance Company ("GMAC").

21.    At that time, Plaintiff was jointly employed by NGIC, NGHC, and the captive law firm NGIC and NGHC used and controlled at the time, known as Law Offices of Carcagno &

Associates.  Its lead attorney was Joseph Carcagno, Esq.

22.    As a trial attorney, Plaintiff successfully defended, negotiated and  settled claims brought by plaintiffs against persons and companies insured by GMAC, and later NGIC.  In fact, at the time he was fired, Plaintiff had obtained more defense verdicts than any other attorney at the firm.

23.    In July 2015, Mr.  Carcagno left the captive  law  firm and was replaced  by Defendant Matthew J. Roe, Esq.  Thereafter, the name of the captive law firm was changed  to "Roe and Associates."

24.    At  all  pertinent times, both Roe and NGIC were Plaintiff's joint  employers.  Roe, through Matthew Roe, directed and supervised Plaintiff's work.  The general  operations  of Roe and Associates were controlled by NGIC, and NGIC had the ultimate power  to hire and fire attorneys at Roe.

25.    Throughout his employment with Defendants, Plaintiff was diligent and hard working. Generally, Plaintiff began his work day in the office by 9:00 a.m, if he did not need to appear in court, and would work until between 5:30 and  7:00 P.M.

26.    As an observant Jew who observed the Sabbath (beginning  Friday evening) and the Jewish holidays, Plaintiff is not permitted to work on the Sabbath and on the days of strict observance of the Jewish holidays.

27.    Plaintiff would adjust his work schedule, in coordination with his employers, to navigate his religious obligations.  Plaintiff would notify Mr. Carcagno, his paralegal, and the calendar clerk whenever he planned to be out of the office for a Jewish holiday, and Plaintiff would take a vacation day for that day.

28.    Prior to Roe taking over, Plaintiff was provided a reasonable accommodation of his Sabbath and  holiday observances with no negative effect on his performance.  In the winter, when the days became shorter, he was permitted to leave early on  Fridays and Jewish holidays to be home before the Sabbath or holiday began, and made up the hours at other times.

29.    Plaintiff would generally eat lunch at his desk, and his work hours were always no less than those of the other attorneys at the Firm.

30.    Plaintiff's performance was always at the highest level.  During the years he worked for NGIC, he tried eight cases to verdict and secured a defense verdict in six.  One of the plaintiff's verdicts was for the exact sum for which had been offered by NGIC to settle the case.  Prior to Roe taking over the captive firm, Plaintiff had always received positive reviews and feedback for his work.

31.    Before Roe took over as the captive law firm, Plaintiff received  a raise of 2% annually (as did most attorneys and other personnel.)  Plaintiff also received  bonuses on both occasions they were awarded, with his largest bonus of $7,500 awarded just prior to Roe taking over.

32.    Roe took over as the captive firm in July of 2015.  Plaintiff's employment terms otherwise remained the same, and he was now directly supervised by Defendant Matthew Roe.

33.    Beginning  in the autumn of 2015 as daylight hours dwindled, Plaintiff began to leave early for the Sabbath and holidays, as he had done when working for Mr. Carcagno. This never created an undue hardship to the firm, as evidenced by the fact that Plaintiff practiced this way for five years.

34.    Plaintiff informed Matthew Roe of his religious observance, the need to leave early on Friday and before a holiday, and of his need  for  reasonable accommodation.

35.     On the afternoon of Monday October 5, 2015, during the holiday of Shemini Atzeres and Simchat Torah, a two day Jewish holiday occurring that year on October 5 and  6, Plaintiff received a telephone call at home from the office from Roe's head paralegal, Lucero Garcia-Flores, who reported directly to Matthew Roe.  Plaintiff had taken vacation days for those days and informed Roe's staff that it was for a Jewish holiday.

36.     Ms. Garcia-Flores left Plaintiff a telephone message that he must call the office because there was an emergency.

37.     Ms. Garcia-Flores had explained to Mr. Roe that Plaintiff would be unavailable due to the Jewish holiday, but she was directed to place the call anyway.

38.     Because the use of a telephone or any electrical device is prohibited on all such holidays, Plaintiff did not return the call the office.

39.     On October 6, 2015, the second day of the Jewish holiday, Matthew Roe sent an email to Plaintiff to convey a "First and Final Warning" for allegedly unacceptable work.

40.     When Plaintiff returned to the office on October 7, 2015, he was told  by Ms. Garcia-Flores that the "emergency" was a routine internal office report that was being prepared by Mr. Roe.  This was not an emergency.

41.     Matthew Roe's communications to Plaintiff on October 5 and 6 were motivated by Mr. Roe's animus to Plaintiff because of his exercise of his Jewish faith.

42.     It was only after Plaintiff refused to violate his religious principles on October 5 and 6 that Matthew Roe questioned his work performance.

43.     Thereafter, Matthew Roe began retaliating against Plaintiff for his religious observance. In particular, he began to schedule office meetings for the attorneys on Fridays, late in the day.

Prior to this time, there had  been no regular meetings of attorneys at the firm

44.      Plaintiff told Matthew Roe that he could not attend any meetings at the scheduled  times as it interfered with his leaving for the Sabbath, and suggested that the meetings be held earlier in the day or on another day.  Matthew Roe refused to reschedule the meetings for times which did not interfere with Plaintiff's religious observance.

45.      Matthew Roe also aggressively questioned Plaintiff as to when the Sabbath begins. Plaintiff showed Matthew Roe a Jewish calendar containing the time for beginning of the Sabbath each week.  Mr. Roe argued with Plaintiff about when he had to leave on Fridays, and told Plaintiff that his own research told him that Plaintiff did not have to be home when Plaintiff said he did, and that the Sabbath schedule emailed from Plaintiff's synagogue was incorrect.

46.      In November 2015 Matthew Roe told Plaintiff that he would hold the late Friday afternoon meetings with all of the other attorneys without Plaintiff.  Plaintiff again asked that the time of the meeting be moved, since his absence from the meetings would undermine him and his effectiveness with the firm.

47.      Nevertheless, Matthew Roe held the late Friday afternoon meetings in Plaintiff's absence.

48.      During the third week of December 2015, Plaintiff conducted  a jury trial in New York State Supreme Court, Richmond County.  Mr. Roe came to the courthouse  to observe the trial.

49.      On the way  back to the office, after Plaintiff and Mr. Roe had left the courthouse, Plaintiff put on his yarmulke.  Matthew Roe stared at Plaintiff in a fixed way as if he were doing something  wrong.  Plaintiff told him that he generally wears a yarmulke but takes it off for work or anything work-related, especially a trial, as there are jurors who may have a prejudice.

50.       Mr. Roe replied that any juror looking at Plaintiff would immediately know he was

Jewish.  When Plaintiff asked him if it was that obvious, Mr. Roe's response, in an exaggerated voice, was "Oh Yes."

51.      Shortly after this incident, Matthew Roe told Plaintiff that the late Friday afternoon meetings were now mandatory and that Plaintiff must attend.  Plaintiff attempted to show him a Jewish calendar again and to ask that the meetings be held earlier in the day or on another day. Mr. Roe again refused, telling Plaintiff that his behavior in not attending the meetings was problematic and disruptive to the functioning of the office.

52.      This course of conduct, both the failure to grant a reasonable  accommodation for Plaintiff's faith, and Mr. Roe's intentional harassment, created a deeply hostile workplace environment for Plaintiff, which continued up to the date of his termination.

53.      In retaliation for Plaintiff's continued refusal to violate his religious principles,  in January and February 2016, Matthew  Roe sent a series of emails questioning Plaintiff's abilities and work ethic.  These criticisms were pretextual, and without merit.

54.      In or about December 2015, Plaintiff was not given a raise by Mr. Roe, the first time that he did  not receive a  raise during his tenure at NGIC.   In addition, in or about late March 2016, Matthew Roe failed to give Plaintiff the bonus given to other Roe employees.  These actions were totally unwarranted, and were plainly caused by Mr. Roe's discriminatory animus toward Plaintiff.

55.      On  March 30, 2016,  Matthew Roe fired Plaintiff in retaliation for Plaintiff standing  up for his religious  principles, and because of Matthew Roe's distaste for Mr. Seltzer's religion.

56.      Upon information and belief, none of the attorneys hired by Matthew Roe after the Plaintiff's termination are Jewish, further evidence of Mr.  Roe's anti-Semitism in the workplace.

**FIRST CAUSE OF ACTION: SECTION 1981 - RACIAL DISCRIMINATION IN CONTRACT**

57.    Plaintiff hereby repeats and realleges each of the preceding allegations as if fully set forth herein.

58.    Plaintiff is a person within the jurisdiction of the United States and has the right to make and enforce contracts.

59.    The Defendants violated Section 1981 by subjecting Mr. Seltzer to a racially hostile working environment, and by firing him because he was Jewish.

60.    As a direct and proximate result of Defendants' discriminatory conduct in violation of Section 1981, Seltzer has sustained economic losses and suffered severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional and physical pain and suffering.

61.    Defendants' unlawful discriminatory actions were committed with malice or with reckless indifference to Seltzer's federally protected rights.

**SECOND CAUSE OF ACTION: TITLE VII - RELIGIOUS DISCRIMINATION**

62.    Plaintiff hereby repeats and realleges each of the preceding allegations as if fully set forth herein.

63.    Plaintiff was at all times relevant to this complaint an employee of Defendants NGIC, NGHC, and Roe & Associates within the meaning of Title VII.

64.    Defendants NGIC, NGHC, and Roe & Associates violated Title VII by subjecting Seltzer to a hostile working environment based on his religion, discriminated against him in the terms

and conditions of his employment because of his religion, and failed to provide a reasonable accommodation of the exercise of his religion.

65.    As a direct and proximate result of  Defendants NGIC's, NGHC's, and Roe & Associates' discriminatory conduct in violation of Title VII, Seltzer has sustained economic losses and suffered severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional and physical pain and suffering.

66.    Defendants' unlawful discriminatory actions were committed with malice or with reckless indifference to Seltzer's federally protected rights.

### THIRD CAUSE OF ACTION: NYCHRL - RELIGIOUS DISCRIMINATION

67.    Plaintiff hereby repeats and realleges each of the preceding allegations as if fully set forth herein.

68.    Defendants violated the NYCHRL by subjecting Seltzer to a hostile working environment, discriminating against him in the terms and conditions of employment on the basis of his religion, and by failing to grant him a reasonable accommodation of his religious practices.

69.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Seltzer has sustained economic losses and suffered severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional and physical pain and suffering.

### FOURTH CAUSE OF ACTION: SECTION 1981 - RETALIATION

70.    Plaintiff hereby repeats and realleges each of the preceding allegations as if fully set forth herein.

71.    Plaintiff engaged in protected activity by requesting a reasonable accommodation of his religious practices, and by observing the Jewish faith.

72.    In violation of Section 1981, Defendants retaliated against Mr. Seltzer for his protected activity by failing to give him a raise, denying him a bonus, subjecting him to a hostile work environment, and firing him.

73.    Plaintiff has suffered and continues to suffer irreparable mental injury as well as economic damages as a result of Defendants' retaliatory conduct.

74.    Defendants' unlawful retaliatory actions were committed with malice and reckless indifference to Seltzer's federally protected rights.

### FIFTH CAUSE OF ACTION: TITLE VII - RETALIATION

75.    Plaintiff hereby repeats and realleges each of the preceding allegations as if fully set forth herein.

76.    Plaintiff engaged in protected activity by requesting a reasonable accommodation of his religious practices, and by observing the Jewish faith.

77.    In violation of Title VII,  Defendants NGIC, NGHC, and Roe & Associates retaliated against Plaintiff for his protected activity by failing to give him a raise, denying him a bonus, subjecting him to a hostile work environment, and firing him.

78.    Plaintiff has suffered and continues to suffer irreparable mental injury as well as economic damages as a result of Defendants' retaliatory conduct.

79.    Defendants' unlawful retaliatory actions were committed with malice and reckless indifference to Seltzer's federally protected rights.

## SIXTH CAUSE OF ACTION: NYCHRL RETALIATION

80.    Plaintiff hereby repeats and realleges each of the preceding allegations as if fully set forth herein.

81.    Plaintiff engaged in protected activity by requesting a reasonable accommodation of his religious practices, and by observing the Jewish faith.

82.    In violation of the NYCHRL, Defendants retaliated against Seltzer for his protected activity by failing to give him a raise, denying him a bonus, subjecting him to a hostile work environment, and firing him.

83.    Plaintiff has suffered and continues to suffer irreparable mental injury as well as economic damages as a result of Defendants' retaliatory conduct.

84.    Defendants' unlawful retaliatory actions were committed with malice and reckless indifference to Plaintiff's rights under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief:

a.    Declaring that the acts and practices of corporate Defendants, complained of herein, to be violations of Section 1981, Title VII and NYCHRL;

b.    Declaring that the acts and practices of the individual Defendant, Matthew Roe, complained of herein, violate the laws of the State of New York;

c.    Enjoining and permanently restraining these violations of law by the Defendants;

d.    Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

e.    Directing Defendants to make Plaintiff whole for all earnings and other benefits he would

have received but for Defendants' unlawful conduct, including but not limited to, wages, bonuses

other lost benefits, and interest thereon;

f.      Directing Defendants to pay Plaintiff compensatory damages, including damages for his

mental anguish, denial of life's pleasures, pain and suffering and humiliation, and interest

thereon;

g.      Awarding Plaintiff the costs of this action together with reasonable attorney's fees;

h.      Directing Defendants to pay punitive damages and interest thereon; and

i.      Granting such other and further relief as this Court deems necessary and proper.

**DEMAND FOR A TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff respectfully

demands that this proceeding be tried to a jury.

Dated:  New York, New York
        December 5, 2019

                                        BERANBAUM MENKEN LLP


                                        _____/s/_____
                                By:     Jason J. Rozger
                                        80 Pine Street, 33rd Floor
                                        New York, New York 10005
                                        (212) 509-1616
                                        ATTORNEYS FOR PLAINTIFF